IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANNAMALAI ANNAMALAI, *also known as* SWAMIJI SRI SELVAM SIDDHAR, **Plaintiff,** vs. DANIEL SPROUL, NATHAN SIMPKINS, GARY BURGESS, THOMAS FLEMING, ASSISTANT WARDEN LECLAIR, RANDALL PASS, LESLIE BROOKS, ANDREU MOULTON, ANNABELL FIELDS, DELOCK, UNITED STATES OF AMERICA, and JOHN DOES 1-10, **Defendants.** | Case No. 22-cv-01541-JPG |

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

This matter is now before the Court for preliminary review of the Complaint filed by Plaintiff Annamalai Annamalai (a/k/a Swamiji Sri Selvam Siddhar), an inmate in the custody of the Federal Bureau of Prisons (FBOP) who is currently incarcerated at the United States Penitentiary in Marion, Illinois (USP-Marion). (Doc. 1, pp. 1-29). Plaintiff brings this action for religious persecution, torture, assault, and retaliation pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and Illinois state law.

1

The Complaint is now before the Court for review 28 U.S.C. § 1915A. Section 1915A requires the Court to screen prisoner complaints and filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). Before screening the claims under 28 U.S.C. § 1915A, the Court will first consider whether any claims are improperly joined and subject to severance. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

## **The Complaint**

In the Complaint (Doc. 1, pp. 1-29), Plaintiff sets forth allegations spanning seven years (2015-22) and four federal prisons (FBOP-Atlanta, GA; FBOP-Cushing, OK; USP-Terre Haute; and USP-Marion, IL). English is not Plaintiff's first language, and he struggles with written communication. Against this backdrop, the Court offers the following summary of his allegations.

Plaintiff is a Hindu high priest who is the head monk of a monastery in India (Siddhar Peedam) with "17 million faithful followers" worldwide. (*Id*. at 3). He immigrated to the United States, where he has legally lived and worked ever since. He was taken into federal custody after "several high powered persons colluded together to destroy and stop the growth of [Plaintiff's] 5 (five) [H]indu [t]emples in the states." (*Id*.). Plaintiff was convicted of "novel" criminal acts in Case No. 13-cr-00437-TCB-CMS (N.D. Ga.) and received a 28-year sentence for bank fraud involving just $11,854.00 in 2015. (*Id*.). Four years later, he successfully challenged his conviction and sentence, resulting in the dismissal of twenty-two (22) of thirty-four (34) counts. On August 23, 2021, Plaintiff was re-sentenced to eighteen (18) years, and he is currently appealing this sentence as well. (*Id*.).

Although he has no prior convictions, Plaintiff was assigned to the Communication Management Unit / Counter Terrorism Unit (CMU / CTU), first at the United States Penitentiary in Terre Haute, Indiana (USP-Terre Haute) in 2015 and then at the United States Penitentiary in Marion, Illinois (USP-Marion) in 2021. Just before his re-sentencing on August 23, 2021, Plaintiff notified FBOP officials that he should not be housed with any inmates in the CMU / CTU because he feared for his life. He informed (1) Assistant Director of the Computation and Designation Center in Grand Prairie, Texas; (2) United States Marshals Service in Atlanta, Georgia; (3) USP-Marion Case Manager Gary Burgess; (4) USP-Marion Intelligence Research Specialist Kathy Hill; (5) Wardens of USP-Terre Haute and USP-Marion; and (6) USP-Terre Haute FBOP Attorney Katherine Sherieveld. (*Id*. at 4). When none of these officials responded, Plaintiff made an oral motion with the judge who resentenced him. Judge Batten "expressly 'ordered' and recommend[ed]" the following at resentencing: "The court also recommends that the defendant not be housed in the communication management unit." (*Id*.).

On August 27, 2021, Plaintiff was placed in FBOP-Atlanta, Georgia. (*Id*.). While there, he again expressed his concerns about the CMU / CTU to unknown officers, SIS DeLoch, and Dr. Chum. These individuals noted his concerns. They took no steps to intervene. (*Id*.).

Plaintiff was soon transferred to FBOP-Cushing, Oklahoma. Once again, he expressed his placement concerns to a counselor, correctional officer, and investigator. Despite these complaints, Plaintiff was transferred to USP-Marion in September 2021, with plans to place him in the CMU / CTU. (*Id*.).

Plaintiff was initially held in isolation until his COVID-19 vaccination status was confirmed. During this time, he became suicidal, concluding that it was better to take his own life

than face assault or murder at the hands of violent inmates in the CMU / CTU (I Unit).  He remained under suicide watch until October 7, 2021.  (*Id*.).

While in quarantine and on suicide watch, Plaintiff told John Does 1-10 that he feared for his life.  (*Id*. at 5).  He specifically identified William White, a well-known white supremacist, as a threat to his safety and explicitly stated that White would attempt to assault or murder him, if he moved into the CMU / CTU (I Unit).  (*Id*. at 8).  One officer advised Plaintiff to speak with his unit team about his concerns when he arrived at the CMU / CTU.  (*Id*. at 5).

Upon transferring into the CMU / CTU on October 7, 2021, Plaintiff told Nathan Simpkins that he feared White and one other inmate (Mr. Muhammad) would attempt to assault or murder him.  (*Id*.).  Simpkins ignored his concerns.  Immediately thereafter, White and Muhammad threatened to "slice [Plaintiff's] head" and "stab [Plaintiff] to death."  (*Id*. at 6).  On October 10, 2021, Plaintiff submitted a six page report describing these threats to Chief Psychologist Annabell Fields.  (*Id*.).

On October 13, 2021, Plaintiff approached Simpkins to report the specific threats White made on his life.  (*Id*. at 7).  While doing so, White actually assaulted Plaintiff in Simpkins' presence by "bumping on [him]" three times and insulting him.  (*Id*.).  Simpkins "laughed and enjoyed" the encounter.  Plaintiff immediately reported the incident to Intelligence Research Specialist Kathy Hill.  (*Id*.).

Later the same day, White attacked Plaintiff.  (*Id*.).  While Plaintiff was sitting at a table with an African American inmate, White approached him from behind.  Before Plaintiff realized that White was behind him, White kicked Plaintiff to the floor, pinned him down, and began choking him.  As White hit Plaintiff in the back of the head while choking him, he yelled, "I WILL KILL YOU MOTHER FU**ER: YOU EVIL HINDU BASTARD DIE NOW: YOU ARE DEAD

NOW: I HATE YOU HINDU BASTARD: YOU EVIL BASTARD I HATE YOU: YOU ARE DEAD NOW . . . DEAD NOW." (*Id*. at 7).  Plaintiff found a pair of craft scissors in his pocket and used them to defend himself.

Plaintiff suffered significant injuries, including extensive blood loss from his head and ears, three broken teeth, a broken finger, and difficulty breathing.  Despite his injuries and his pleas for medical treatment, Plaintiff was thrown into solitary confinement without any medical care at all.  He was then issued a disciplinary ticket for possessing a weapon and fighting an inmate.  Following a disciplinary hearing, Plaintiff was punished with fifty (50) days in segregation.  He also lost 54 days of good conduct credit.  He later challenged this decision.  Plaintiff's disciplinary report was deemed unfounded, and his record was expunged. (*Id*.).

### Claims

Based on the allegations, the Court recognizes the following enumerated counts in the *pro se* Complaint, consistent with Plaintiff's identification of the same:

| | |
|---|---|
| **Count 1:** | Civil fraud claim against Simpkins, Burgess, Sproul, and Does 1-10 for using a false notice of transfer to place Plaintiff in the CMU / CTU at USP-Terre Haute on or around November 23, 2015 and at USP-Marion on or around October 7, 2021, in violation of 18 U.S.C. § 3621 (*Id*. at 8-9). |
| **Count 2:** | FTCA claim against the United States for FBOP officials' use of a false notice of transfer to place Plaintiff in the CMU / CTU at USP-Terre Haute on or around November 23, 2015 and at USP-Marion on or around October 7, 2021, in violation of 18 U.S.C. § 3621 (*Id*. at 9). |
| **Count 3:** | FTCA claim against the United States for failing to protect Plaintiff from the serious risk of harm William White posed to his health or safety in USP-Marion's CMU / CTU in October 2021 (*Id*. at 10-11). |
| **Count 4:** | Eighth Amendment claim pursuant to *Bivens* against Simpkins, LeClair, Sproul, DeLoch, Fields, Burgess, Fleming, and Does 1-10 for failing to protect Plaintiff from the risk of harm William White posed to his health or safety in USP-Marion's CMU / CTU in October 2021 (*Id*. at 11-12). |

**Count 5:** Claim for subjecting Plaintiff to restricted environmental stimuli (RES) by placing him in the "terrorist unit," where he was attacked by William White on October 13, 2021, and then placing him for fifty days in isolation, where he was surrounded by other violent inmates (*Id*. at 12-14).

**Count 6:** FTCA claim against the United States arising from the Department of Justice's failure to supervise and/or train FBOP officials (*Id*. at 14).

**Count 7:** FTCA claim against the United States arising from Plaintiff's general denial of medical care, resulting in a 300% increase in medications for chronic conditions after 2015 (*Id*. at 14-15).

**Count 7a:** FTCA claim against the United States for Fields, Pass, Brooks, Moulton, and Doe 1-10's negligent exposure of Plaintiff to COVID-19 in February 2022, which caused him to become ill and develop long COVID (*Id*. at 15).

**Count 7b:** FTCA claim against the United States based on Moulton, Pass, and Does 1-10's deliberate disregard of Plaintiff's medical and mental health needs following his assault by William White in October 2021 (*Id* at 15-16).

**Count 8:** Eighth Amendment deliberate indifference claim against Pass, Brooks, Moulton, Fields, and Does 1-10 for failing to provide adequate medical care for Plaintiff's injuries before and after the "murder attack" by William White (*Id*. at 16).

**Count 9:** FTCA claim against United States for FBOP officials' intentional infliction of emotional distress on Plaintiff (*Id*. at 16-21).

**Count 10:** FTCA claim against United States for FBOP officials' negligent infliction of emotional distress on Plaintiff (*Id*. at 21).

**Count 11:** Illinois state law claim for malicious prosecution against Fleming, Huggins, and Simpkins for punishing Plaintiff with 50 days in segregation and 54 days of lost good conduct credit after issuing him a malicious incident report for fighting another inmate and possessing a dangerous weapon, when Plaintiff was actually defending himself from a murderous attack using craft scissors and the ticket was subsequently vacated and his record expunged (*Id*. at 21-22).

**Count 12:** Illinois state law claim for abuse of process against Sproul, Simpkins, Fleming, and Does 1-10 for knowing and intentionally harming Plaintiff by issuing the 2021 incident report, 2021 disciplinary hearing officer report, and 2015 and 2021 notice of transfer (*Id*. at 23).

| | |
|---|---|
| **Count 13:** | Request for full faith and credit and specific performance of State of Indiana's Court Order in Vigo County Superior Court Case No. 84D02-1704-MI-2768 (*Id*. at 24). |
| **Count 14:** | Retaliation claim against Sproul, Simpkins, Fields, and Doe 1-10 for preventing meaningful access to First Step Act Programs, phone calls, and special mail (*Id*. at 25). |
| **Count 15:** | Retaliation claim against Sproul, Simpkins, and Does 1-10 for suspending Plaintiff's access to his email for 90 days because they hated Plaintiff's religion (*Id*. at 26). |
| **Count 16:** | Loss of property, teeth, and finger claim against United States and all individual defendants (*Id*. at 28). |
| **Count 17:** | Punitive damages claim against United States and all individual defendants (*Id*. at 28-29). |

**The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.**

### Severance

Plaintiff brings nineteen claims against twenty-one defendants for events that arose at different facilities over the course of seven years and involve separate transactions or occurrences altogether. Several of these claims and/or parties are improperly joined in a single action and are subject to severance. *See* FED. R. CIV. P. 18, 20(a)(2). Plaintiff's "core claims" arise from the inmate attack, subsequent injuries, and related punishment (*i.e.*, Counts 3-6, 7b-12, 16-17). These core claims cannot proceed with unrelated claims stemming from a false notice of transfer (Counts 1 and 2), general denial of medical care (Counts 7 and 7a), specific enforcement of an Indiana court order (Count 13), and generalized retaliation (Counts 14 and 15). Severance of the unrelated claims is warranted.

District courts apply Rules 18, 20, and 21 of the Federal Rules of Civil Procedure to prevent improperly joined parties and/or claims from proceeding together in the same suit. *George*, 507

F.3d at 607.  Under Rule 21, district courts have broad discretion when deciding whether to sever claims or dismiss improperly joined defendants.  *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).  The Court will exercise its discretion and sever the following claims into new suits, as follows:

### Case #1:

**Count 1:**   Civil fraud claim against Simpkins, Burgess, Sproul, and Does 1-10 for using a false notice of transfer to place Plaintiff in the CMU / CTU at USP-Terre Haute on or around November 23, 2015 and at USP-Marion on or around October 7, 2021, in violation of 18 U.S.C. § 3621 (*Id*. at 8-9).

**Count 2:**   FTCA claim against the United States for FBOP officials' use of a false notice of transfer to place Plaintiff in the CMU / CTU at USP-Terre Haute on or around November 23, 2015 and at USP-Marion on or around October 7, 2021, in violation of 18 U.S.C. § 3621 (*Id*. at 9).

### Case #2:

**Count 7:**   FTCA claim against the United States arising from Plaintiff's general denial of medical care, resulting in a 300% increase in medications for chronic conditions after 2015 (*Id*. at 14-15).

**Count 7a:**   FTCA claim against the United States for Fields, Pass, Brooks, Moulton, and Doe 1-10's negligent exposure of Plaintiff to COVID-19 in February 2022, which caused him to become ill and develop long COVID (*Id*. at 15).

### Case #3:

**Count 13:**   Request for full faith and credit and specific performance of State of Indiana's Court Order in Vigo County Superior Court Case No. 84D02-1704-MI-2768 (*Id*. at 24).

### Case #4:

**Count 14:**   Retaliation claim against Sproul, Simpkins, Fields, and Doe 1-10 for preventing meaningful access to First Step Act Programs, phone calls, and special mail (*Id*. at 25).

**Count 15:**   Retaliation claim against Sproul, Simpkins, and Does 1-10 for suspending Plaintiff's access to his email for 90 days because they hated Plaintiff's religion (*Id*. at 26).

Plaintiff will have a reasonable period of time to decide whether he wishes to pursue his claims in newly-severed Cases ## 1, 2, 3, and 4. If he chooses to proceed with any of these matters, Plaintiff will be responsible for paying an additional filing fee for each newly-severed action and may also receive a "strike" if the action is dismissed for one of the reasons stated in 28 U.S.C. § 1915(g). If he chooses not to proceed with any of these severed cases, Plaintiff can avoid payment of a filing fee for the severed case only if he timely advises the Court of his decision by the deadline set forth below.

Plaintiff's "core claims" (Counts 3, 4, 5, 6, 7b, 8, 9, 10, 11, 12, 16, and 17) will remain in this action. The Court will screen these claims under 28 U.S.C. § 1915A in a separate Order.

## Disposition

**IT IS ORDERED** that due to the sensitive nature of the allegations set forth in the Complaint and information contained in the Exhibits, Plaintiff's Motion to Seal Complaint and Exhibits (Doc. 3) is **GRANTED**. The Clerk's Office is **DIRECTED** to maintain **UNDER SEAL** Docs. 1, 1-1, 1-2, 1-3, 1-4, and 1-5. **This Order does not extent to any other documents filed in this action, absent a separate Court Order.**

**IT IS ORDERED** that the Complaint (Doc. 1) addresses claims and parties that are improperly joined in a single action. Accordingly, the Clerk's Office is **DIRECTED** to **OPEN** four (4) additional suits to address the following claims **SEVERED** from this matter:

**Case #1:** *Plaintiff* Annamalai Annamalai's claims in Counts 1 and 2 against *Defendants* Nathan Simpkins, Gary Burgess, Daniel Sproul, John Does 1-10, and United States;

**Case #2:** *Plaintiff* Annamalai Annamalai's claims in Counts 7 and 7a against *Defendants* Annabell Fields, Randall Pass, Leslie Brooks, Andreu Moulton, and John Does 1-10.

**Case #3:** *Plaintiff* Annamalai Annamalai's claim in Count 13 against *Defendant* Unknown Defendant.

> **Case #4:** *Plaintiff* Annamalai Annamalai's claim in Count 14 and 15 against *Defendant* Daniel Sproul, Nathan Simpkins, Annabell Fields, and John Does 1-10.

The Clerk is **DIRECTED** to file the following documents in each newly-severed case:

1) The **SEALED** Complaint (Doc. 1) and **SEALED** Exhibits (Docs. 1-1 to 1-5);
2) Motion for Leave to Proceed *in forma pauperis* (Doc. 4);
3) This Memorandum and Order Severing Case.

**IT IS ORDERED** that **COUNTS 1, 2, 7, 7a, 13, 14,** and **15** are **DISMISSED** from *this action*.

**IT IS ORDERED** that **COUNTS 3, 4, 5, 6, 7b, 8, 9, 10, 11, 12, 16,** and **17** remain in this action, and the Court will separately enter a Screening Order pursuant to 28 U.S.C. § 1915A.

**IT IS ORDERED** that Plaintiff's Motion for Status (Doc. 22) is **DISMISSED** as **MOOT**, in light of this Order which serves as a status update.

**IT IS ORDERED** that all other pending motions (Docs. 5, 16, and 17) pertain to Plaintiff's core claims and remain in this action. The Court will address each one in a separate Order.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: 11/4/2022**                                  s/J. Phil Gilbert
                                                                  **J. PHIL GILBERT**
                                                                  **United States District Judge**